UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| ELIJAH GARRISON, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No.   3:24-CV-385-TAV-JEM |
| JASON SWALLOWS, | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER

This prisoner's pro se action for violation of 42 U.S.C. § 1983 proceeded as to Plaintiff's claim that Jason Swallows used excessive force against him by shooting him in the back while his hands were in the air on August 22, 2024 [Doc. 4, pp. 1–8; Doc. 11, p. 5].  Now before the Court are Plaintiff's (1) motion for service of summons and complaint [Doc. 8]; (2) motion for an injunction requiring prison officials to provide him with a prisoner inmate trust account document [Doc. 9]; (3) motion for leave to amend his complaint to add the Tennessee Department of Correction ("TDOC") as a defendant [Doc. 14]; (4) motion to appoint counsel [Doc. 15]; and (5) motions seeking discovery [Docs. 27, 29].  Also before the Court is Defendant's motion for summary judgment [Doc. 18].

## I.   MOTION FOR SERVICE

In his motion for service, Plaintiff requests that the Court send him copies of the complaint and certain service documents [Doc. 8].  After Plaintiff filed this motion, however, the Court entered an order in which it, among other things, screened Plaintiff's complaint, provided Plaintiff with the relevant service documents, and requested that the

United States Marshal serve the complaint on Defendant [Doc. 11]. Counsel for Defendant then appeared in this case [Doc. 17]. Accordingly, Plaintiff's motion regarding service [Doc. 8] is **DENIED as moot**.

## II. MOTION FOR INJUNCTION

In his motion for injunction, Plaintiff requests that the Court order that prison officials provide him with a notarized copy of his prison trust fund account certificate [Doc. 9]. But as the Court has now granted Plaintiff leave to proceed *in forma pauperis* herein based on the financial documents he provided [Doc. 11, pp. 1–2], Plaintiff's motion for injunction [Doc. 9] is **DENIED as moot**.

## III. MOTION TO AMEND

In his motion to amend his complaint, Plaintiff seeks to add the TDOC as a defendant because he asserts that this entity is liable for the acts of Swallows, whom he states is a TDOC employee [Doc. 14, p. 1]. In support of this motion, Plaintiff filed his proposed second amended complaint [Doc. 14-1].[1]

As Plaintiff filed his motion to amend his complaint [Doc. 14] within the time period in which he could amend his complaint as a matter of course under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, this motion [*Id.*] is **GRANTED**, and the Court will now screen Plaintiff's second amended complaint [Doc. 14-1] under the Prison Litigation

---

[1] The Court additionally notes that Plaintiff also sent the Court a separate complaint against the Northeast Correctional Complex that arises out of a separate incident during his confinement, which the Clerk initially docketed only as a notice in this case [Doc. 10]. However, the Clerk has now refiled this complaint as a new action [*Id.*]. *Garrison v. Northeast Corr. Complex*, No. 3:24-MC-59 (E.D. Tenn. filed Oct. 1, 2024).

2

Reform Act ("PLRA"). Under the PLRA, district courts must screen prisoner complaints and dismiss claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the United States Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim [at screening] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review, a prisoner complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Plaintiff's proposed amended complaint fails to state a claim upon which relief may be granted under § 1983 against the TDOC, as the TDOC is not an entity subject to suit under § 1983. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding that claims against the TDOC, as an administrative department of the State, are not cognizable under § 1983); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (providing that "a State is not a person within the meaning of § 1983"). Thus, the TDOC will be **DISMISSED**, and this action still proceed only as to Plaintiff's excessive force claim against Swallows.

Accordingly, Plaintiff's motion to amend his complaint [Doc. 14] is **GRANTED**, the Court considers Plaintiff's proposed amended complaint [Doc. 14-1] as the operative complaint in this action, and any claims against the TDOC are **DISMISSED**.

3

### IV. MOTION TO APPOINT COUNSEL

In his motion to appoint counsel, Plaintiff requests appointment of counsel in this action because he has been in solitary confinement since August 28, 2024, and therefore has only one hour of recreation on weekdays and limited access to law library materials [Doc. 15, pp. 1–2]. Plaintiff also asserts that the Court should appoint him counsel because the incident underlying his complaint is on video [*Id.* at 2].

Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993). A district court has discretion to determine whether to appoint counsel for an indigent plaintiff. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims. *Lavado*, 992 F.2d at 605–06.

As to the first two factors, as set forth above, this action is proceeding only as to one excessive force claim against one defendant, which is a standard prisoner § 1983 claim that is not factually or legally complex. As to the third factor, it is apparent from his filings that Plaintiff can adequately present his claims. Also, Plaintiff's allegations regarding his solitary confinement and limited access to legal materials are not unusual for prisoner plaintiffs. Moreover, Plaintiff's assertion that the incident underlying his complaint was caught on video is not relevant to the Court's determination of whether to appoint him counsel.

4

Thus, Plaintiff has not established that this is an exceptional case where he is entitled to appointment of counsel, and his motion to appoint counsel [Doc. 15] is **DENIED**.

V.      **MOTIONS FOR DISCOVERY**

After Defendant filed his motion for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies prior to filing this action [Docs. 18, 19], Plaintiff did not file a timely response. But Plaintiff did file two motions seeking discovery and/or inspection of camera footage and the "log in record" for Defendant's pepper ball gun [Docs. 27, 29].

"The general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996). Where a district court denies a request for discovery in the face of a motion for summary judgment, the United States Court of Appeals for the Sixth Circuit will consider the following factors in determining whether this was an abuse of discretion: (1) when the party seeking discovery learned of the discovery issue, (2) how further discovery would affect the summary judgment ruling, (3) the length of the discovery period, (4) whether the moving party was dilatory, and (5) whether the adverse party was responsive. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). The primary consideration is whether the moving party diligently pursued discovery. *Id.* However, "[a] district court does not abuse its discretion when, as here, granting a party's request for additional discovery 'would not have changed the ultimate result.'" *Health & Wellness Lifestyle Clubs, LLC v. Raintree Golf, LLC*, 808

5

F. App'x 338, 346 (6th Cir. 2020) (quoting *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1197 (6th Cir. 1995)).

Given the early stage of this litigation, Plaintiff promptly sought the discovery at issue. Nevertheless, as the camera footage and log in record have no relevance to the pending motion for summary judgment asserting that Plaintiff failed to exhaust his available administrative remedies prior to filing this action [Docs. 18, 19], providing Plaintiff with the requested discovery items would not change the result of the instant Memorandum Opinion and Order.

As such, Plaintiff's motions for discovery [Docs. 27, 29] are **DENIED.**

## VI. SUMMARY JUDGMENT

Defendant filed a motion for summary judgment [Doc. 18]. In support of this motion, Defendant filed a memorandum [Doc. 19], a statement of undisputed facts [Doc. 20], and various exhibits [Docs. 20-1–20-4]. Plaintiff did not file a timely response to this motion. *See* E.D. Tenn. L.R. 7.1(a). Nor did Plaintiff seek an extension of time to file a response. But Plaintiff did file an untimely response to this motion [Doc. 31], in support of which he filed a declaration [Doc. 30], a memorandum [Doc. 32], and a statement of undisputed facts [Doc. 33]. Defendant filed a reply [Doc. 34].

The Court considers Plaintiff's untimely filings in response to defendant's motion summary judgment, mindful of its obligation to "liberally construe" pro se filings. *Simmons v. United States*, 142 S. Ct. 23, 24 (2021) (denial of petition for writ of certiorari). Ultimately, the Court finds that a genuine issue of material fact remains as to whether

6

Plaintiff exhausted his available administrative remedies prior to filing this action. Accordingly, Defendant's motion for summary judgment [Doc. 18] will be **DENIED.**

## A. Legal Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

Failure to exhaust is an affirmative defense for which a defendant bears the burden of proof. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). Accordingly, when a defendant in a prisoner civil rights action moves for summary judgment on exhaustion grounds, he "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455–56 (citations and internal quotation marks omitted). Once a defendant has demonstrated that there was a generally available administrative remedy that the plaintiff did not exhaust, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v.*

7

*Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (citation omitted); *see also Napier v. Laurel Cnty.*, 636 F.3d 218, 225–26 (6th Cir. 2011) (finding once defendants put forth evidence of a valid administrative process, plaintiff must present evidence to rebut the availability of that remedy to defeat motion for summary judgment).

B. Background

On September 4, 2024, Plaintiff initiated this action by filing a complaint [Doc. 1, p. 3]. Plaintiff later filed an amended complaint, which is the operative complaint herein, in which he claims that Defendant used excessive force against him by shooting him in the back 15 times while his hands were raised [Doc. 4, pp. 1–4; Doc. 11, p. 5].

In support of his motion for summary judgment, Defendant filed, among other things, (1) an affidavit from the grievance chairperson at Plaintiff's facility indicating that Plaintiff did not file a grievance regarding any excessive force incident that occurred in August of 2024 [Doc. 20-1, pp. 1–4], and (2) Plaintiff's grievance log, which does not list a grievance for an excessive force incident from August of 2024 [Doc. 20-4, p. 2]. Additionally, in his statement of undisputed facts in support of his motion for summary judgment, defendant acknowledges that Plaintiff twice attempted to file a grievance regarding the excessive force claim underlying his complaint [Doc. 20, p. 2]. To support this statement of fact, Defendant cites grievance documents Plaintiff filed in support of his previous motion for injunction [*Id.* (citing Doc. 6-2)].

The grievance documents Defendant cites to support this statement of fact include a letter from a grievance clerk indicating that (1) Plaintiff submitted two grievances regarding the excessive force incident underlying his complaint; (2) the prison official who

8

responded to Plaintiff's first grievance regarding the excessive force incident underlying his complaint deemed that grievance inappropriate under the applicable grievance procedure because it contained a threat and therefore requested that Plaintiff refile the grievance without the threat; (3) Plaintiff then refiled the grievance with the same threatening language; and (4) Plaintiff subsequently filed another grievance challenging the denial of his earlier grievances that also contained threatening language [Doc. 6-2, p. 1]. Notably, in this letter, the grievance clerk (1) notified Plaintiff that he may still file a grievance for excessive force against defendant if he did so in a manner that complied with the applicable grievance procedures, including "abstaining from making even veiled threats against anyone, including staff members"; (2) acknowledged that Plaintiff's allegation that Defendant "shot/peppered [him] seven (7) times *may* rise to the level of '*excessive force*'"; (3) noted that, without Plaintiff filing a proper grievance, the grievance board could not help Plaintiff; and (4) specifically stated that "[t]he Grievance Department is more than willing to process your grievance and see it through the proper channels and procedures if you will simply observe the rules of filing an appropriate grievance. Until you do that, there is nothing we can do to assist you" [*Id.*].

With this letter, Plaintiff also included the second grievance he filed regarding the excessive force incident underlying his complaint on August 29, 2024, and the rejection letter for that second grievance [*Id.* at 3–6]. In this second grievance, Plaintiff admits that his first grievance about the excessive force incident included a threat, sets forth allegations about the excessive force incident, and states in relevant part that "staff chose to write me up for threat[en]ing employee because I stated that I intended to harm Officer Swallow[s]

9

whenever we come off lockdown for shooting me in the back while my hands w[ere] in the air even though that is true I did make a threat in the Grievance #1 because I was highly upset" [Doc. 6-2, pp. 3–4; Doc. 30, p. 5]. In the handwritten portion of the cover letter rejecting this second grievance because it contained threatening language, the grievance clerk specifically asked that Plaintiff "please rewrite grievance and exclude all threats" [Doc. 6-2, p. 2]. Additionally, a typed portion of the form specifically notified Plaintiff he could appeal the rejection of that second grievance within seven days [*Id.*].

In the grievance documents attached to his motion for an injunction, Plaintiff also included a third grievance he filed referencing the excessive force incident underlying this action on September 10, 2024 [*Id.* at 5–6].

Additionally, in support of his motion for summary judgment, Defendant filed the applicable TDOC grievance procedures and policies and inmate grievance handbook, which state in relevant part (1) that a prisoner may appeal a finding that his grievance is inappropriate to the grievance process [Doc. 20-3, p. 9]; and (2) under the heading "Abuse of the Grievance Procedure," that grievances that include threats may result in disciplinary action [Doc. 20-2, pp. 4, 5, 6; *see also* Doc. 20-3].

In his sworn declaration in response to the motion for summary judgment, Plaintiff asserts, among other things, that (1) the second grievance he filed regarding the excessive force incident underlying his complaint did not contain any threats or profanity, but the TDOC official who responded still refused to process it; and (2) he also filed an emergency grievance regarding the excessive force incident underlying his complaint during the last week of September 2024 [Doc. 30, pp. 2–3].

10

## C. Analysis

As Defendant has failed to demonstrate that no genuine dispute remains as to whether Plaintiff failed to exhaust his available administrative remedies for his excessive force claim proceeding herein prior to filing this action, defendant's motion for summary judgment [Doc. 18] will be **DENIED**. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statute requires "proper exhaustion" of administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

To properly exhaust his claims, a prisoner must utilize every step of the prison's procedure for resolving his grievance and follow the "critical procedural rules" in a manner that allows prison officials to review and, where necessary, correct the issues set forth in the grievance "on the merits." *Troche v. Crabtree*, 814 F.3d 795, 798 (6th Cir. 2016) (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)). "There is no uniform federal exhaustion standard [and] [a] prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

Although the PLRA requires "proper exhaustion," *Woodford*, 548 U.S. at 93, the Supreme Court has recognized that the statute "poses no bar" where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016); *see Perttu v.*

11

*Richards*, 605 U.S. \_\_\_ (2025), 145 S. Ct. 1793 (slip opinion) (affirming the continued applicability of *Ross*). Textually, the Court framed such exceptional circumstances as a question of whether administrative remedies were actually "available" to an inmate. *Ross*, 578 U.S. at 648. In an unpublished opinion applying *Ross*, the Sixth Circuit vacated a district court's judgment that overlooked a prisoner's "assertions that prison officials prevented him from exhausting his administrative remedies." *Gilmore v. Ormond*, No. 19-5237, 2019 WL 8222518, at *2 (6th Cir. Oct. 4, 2019) (unpublished) (citing *Ross*, 578 U.S. at 644). Such an allegation, the appellate court reasoned, "creates a triable issue as to whether prison officials impeded [the prisoner's] ability to exhaust his claims and therefore made the grievance system unavailable to him." *Id.*; *see also Reed v. Parsons*, No. 6:23-CV-127, 2024 WL 3404607, at *4 (E.D. Ky. July 11, 2024) (citing *Gilmore* and denying summary judgment based on allegations that inmate's access to administrative remedies was thwarted).

In this case, it is undisputed that, prior to filing this action, Plaintiff filed two grievances regarding Defendant's alleged use of excessive force against him, but TDOC officials rejected those grievances as improper because they contained threatening language.[2] While Plaintiff appears to acknowledge that TDOC officials properly rejected

---

[2] Notably, as set forth above, the documents Plaintiff filed in support of his motion for injunction also indicate that on September 10, 2024, he filed a third grievance referencing his excessive force claim against Defendant [Doc. 6-2, pp. 5–6]. And in the declaration he filed in response to Defendant's motion for summary judgment, Plaintiff asserts that in the last week of September 2024, he filed an emergency grievance regarding this excessive force incident, to which he did not receive a response [Doc. 30, p. 3]. But to the extent that Plaintiff asserts that these third and fourth grievances referencing Defendant's use of excessive force demonstrate his exhaustion of his available administrative remedies for his claim proceeding herein, this assertion is misplaced, as Plaintiff filed these grievances after he filed his original complaint in this action on

12

Case 3:24-cv-00385-TAV-JEM    Document 39    Filed 07/08/25    Page 12 of 15
PageID #: 244

his first grievance due to it containing a threat, he asserts that his second grievance did not contain a threat and that TDOC officials therefore improperly rejected that grievance. Accordingly, the Court will now address whether (1) Defendant has set forth sufficient proof that TDOC officials properly rejected Plaintiff's second grievance, and (2) if not, whether a reasonable jury could find that Plaintiff exhausted his available administrative remedies prior to filing this action.

The Court finds that a reasonable jury could find that TDOC officials improperly rejected Plaintiff's second grievance regarding the incident underlying his complaint. As set forth above, in his second grievance, Plaintiff stated in relevant part that "staff chose to write me up for threat[en]ing employee because I stated that I intended to harm Officer Swallow[s] whenever we come off lockdown for shooting me in the back while my hands w[ere] in the air even though that is true I did make a threat in the Grievance #1 because I was highly upset" [Doc. 6-2, pp. 3–4; Doc. 30, p. 5]. The letter accompanying TDOC officials' rejection of this second grievance indicates that they viewed this portion of the second grievance as a "veiled threat" that violated the TDOC's grievance procedures and policies [Doc. 6-2, p. 1]. However, making all plausible inferences in Plaintiff's favor, a reasonable jury could find that Plaintiff's second grievance merely referenced the earlier

---

September 4, 2024 [Doc. 1, p. 3]. Accordingly, these September grievances are not relevant to the issue before the Court, which is whether Plaintiff exhausted his available administrative remedies prior to filing this action. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (providing that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." (citations omitted)).

threat he made in his first grievance and did not actually contain a new threat.[3]  As in *Gilmore*, Plaintiff's allegation "creates a triable issue as to whether prison officials impeded [the prisoner's] ability to exhaust his claims and therefore made the grievance system unavailable to him."  2019 WL 8222518, at *2; *see also Rogers v. Keys*, No. 3:23-CV-471, 2025 WL 1508038, at *5 (M.D. Tenn. May 27, 2025) (holding that whether prison officials impeded defendant's attempt to file grievances is "directly relevant" to determining whether a grievance process was "available" for purposes of PLRA exhaustion); *Bailey v. Michigan Dep't of Corr.*, No. 19-13442, 2020 WL 4934314, at *5 (E.D. Mich. Aug. 24, 2020) (holding that allegations of "improper rejection" could constitute exhaustion, thereby denying summary judgment).  Thus, the Court finds that a genuine question of material fact remains as to whether TDOC officials improperly rejected Plaintiff's second grievance.

Because Defendant has failed to show "that the evidence is so powerful that no reasonable jury would be free to disbelieve it," the burden of proof has not yet shifted to Plaintiff.  *Surles*, 678 F.3d at 455–56, 58.  And given that this triable issue pertains to Plaintiff's second grievance filing, this finding is sufficient to defeat summary judgment without need to address his failure to refile this grievance and/or appeal the second grievance.

---

[3] The Court further notes that while the TDOC's grievance policies state that grievances that include threats may result in disciplinary action, they do not state that grievances that contain threats are not permitted [Doc. 20-2, p. 4].

As such, Defendant has failed to meet his burden to show that no reasonable jury could find that Plaintiff exhausted his available administrative remedies prior to filing this action, and his motion for summary judgment [Doc. 18] is hereby **DENIED**.

## VII. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motions for service [Doc. 8] and for an injunction [Doc. 9] are **DENIED as moot**;

2. Plaintiff's motion to amend his complaint [Doc. 14] is **GRANTED**, the Court considers Plaintiff's proposed amended complaint [Doc. 14-1] as the operative complaint in this action, and all claims against the TDOC are **DISMISSED**;

3. Plaintiff's motion to appoint counsel [Doc. 15] is **DENIED**;

4. Defendant's motion for summary judgment [Doc. 18] is **DENIED.**

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE